**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JAMES A. HENSON, JR. | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. JKB-17-0507 |
| RONALD SHANE WEBER, *et al.*, | * | |
| Defendants | * | |
| | *** | |

## MEMORANDUM

Pending is a motion to dismiss or, in the alternative, motion for summary judgment filed by defendants Assistant Warden Ronald Weber, Melanie Gordon, MHPCA and William Taylor, Social Worker V, Bruce Liller, Lauren Beitzel, Melissa Harr, and Laura Wilson.[1] ECF 9. Plaintiff has responded. ECF 11.[2] Upon review of the papers filed, the court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, defendants' dispositive motion will be granted.

## I. Background

The case was instituted upon receipt of a civil rights complaint filed by plaintiff James Henson, an inmate currently confined at the Western Correctional Institution ("WCI"). ECF 1. Plaintiff named as defendants Ronald Weber, Melanie Gordon, William Taylor, Bruce Liller, Lauren Beitzel, Melissa Harr, Laura Wilson, "WCI Medical Staff,"[3] Nurse Monica, and Jeanette

---

[1] The Clerk shall amend the docket to reflect the correct spellings of Defendants' names.

[2] Plaintiff's filings are difficult to decipher. To the extent plaintiff's response raises new claims, such claims are not properly before the court and will not be considered.

[3] There is no legal entity named "WCI Medical Staff." Because defendant "WCI Medical Staff" is not a "person" subject to suit or liability under § 1983, plaintiff's complaint against "WCI Medical Staff" must be dismissed.

Simmons.[4]  ECF 1 at 1.  Plaintiff states that he suffers from two broken collarbones and a severely damaged rotator cuff that causes numbness and pain throughout his extremities.  *Id*. at 3.  He states that he is in need of an MRI and medication for pain relief.[5]  *Id*.  He seeks access to the courts, an MRI, 24-hour medication for pain, reconstructive surgery, protective custody, an independent federal investigation, and a "Section 20 interstate correction compact (ICC)."  ECF 1 at 3.

## A.    Administrative Remedies

Plaintiff filed an administrative remedy on February 1, 2017 (WCI-329-17), raising the same allegations as he does in the instant complaint.  ECF 1-1 at 1; ECF 9-2 at 10-11.  The ARP was dismissed on February 2, 2017, pending submission of more information regarding the location of each physical injury.  Plaintiff failed to submit the requested information, and the ARP was dismissed on February 18, 2017, for failing to follow the instructions.  ECF 9-2 at 10. Plaintiff did not appeal the dismissal to the Commissioner of Correction ("headquarters appeal"). Rather, on March 22, 2017, he filed a grievance with the inmate grievance office ("IGO"), which dismissed the appeal on May 17, 2017.  *Id*. pp. 8-9, ¶ 3(b) (Neverdon Decl).

## B.    Factual Response to Claims

There is no evidence in plaintiff's medical records that he suffers from broken clavicles as he alleges in his complaint.  ECF 9-3 (Medical Records).  An x-ray of his shoulder was taken in July of 2014, following an altercation, and it showed no fracture, dislocation, or subluxation.

---

[4]      Jeanette Simmons and Nurse Monica have not been served with the complaint.  Plaintiff does not explain how either Nurse Monica or Jeanette Simmons (who is apparently a mental health provider) is responsible for the denial of medical care to him.  The complaint against them shall be dismissed without prejudice.

[5]      Plaintiff also refers to cases he previously filed with the court wherein he alleges false documents were filed.  *Id*.  It is unclear how these allegations relate to the alleged denial of medical care.

*Id.* at 27-28. X-rays of both of plaintiff's shoulders were taken in October of 2014, due to plaintiff's continued complaints. *Id.* at 56. No evidence of fracture, dislocation, or subluxation was found in either shoulder. *Id.* The medical records demonstrate that plaintiff is regularly seen by medical staff (ECF 9-5) and regularly refuses to cooperate with his health care providers. ECF 9-3 at 5, 7-9, 12-14, 34, 36-40, 42-43, 45, 50-51, 58-61, 63-85, 87-89, 92-112, 114-116, 118-119, 122.

Moreover, Assistant Warden Weber, formerly a Mental Health Professional Supervisor at WCI, avers that medical services at WCI are provided to inmates by a private medical contractor. ECF 9-2, p. 2, ¶¶ 1-2. In both his position as Mental Health Professional Supervisor and Assistant Warden, Weber states that he had no personal involvement in the provision of medical care. *Id.* at ¶ 2. He had no authority to order medical staff to perform any particular medical procedure or treatment. *Id.* He also avers that he had no responsibility to monitor the provision of medical services to inmates. *Id.* He further states that he is not licensed to practice medicine and defers the medical care and treatment of inmates to the expertise of the contracted medical staff. *Id.* Weber states that inmates can fill out sick call slips if they wish to be seen by medical contractors, who determine the dates and times for those appointments. *Id.* at p. 3, ¶ 3.

Taylor and Gordon each aver that they have no personal involvement in the provision of medical care to any WCI inmate. ECF 9-2, p. 4, ¶ 2 (Taylor Decl.); ECF 9-2, p. 6, ¶ 2 (Gordon Decl.). They state that they have not hindered access to treatment in any way. *Id.* They each confirm that they have no authority to order contracted medical staff to perform any particular procedure or provide any particular treatment and have no responsibility to monitor the provision

of medical services. They further aver they are not licensed to practice medicine and defer the medical care and treatment of inmates to the expertise of medical staff. *Id.*

In affidavits filed in another case involving plaintiff, Beitzel, Harr, and Wilson each aver that they have no role in providing medication to manage an inmate's pain. *See Henson v. Speir, et al.*, Civil Action No., JKB-16-289, ECF 17-2 at 4-9. Wilson, Harr, and Beitzel advise that they are mental healthcare providers at NBCI (not WCI where plaintiff is currently confined) and as such do not participate in the provision of any medical treatment or the prescription of medications for inmates. *Id.* Each states that she has never been involved in, interfered with, or delayed the provision of medical care to plaintiff. *Id.*

## II. Standard of Review

### A.      Motion to Dismiss

The purpose of a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that Plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 563. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusional factual allegations devoid of

any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

### B.    Motion for Summary Judgment

Summary judgment is governed by Federal Rule of Civil Procedure 56(a), which provides in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).  Because plaintiff is self-represented, his submissions are liberally construed.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'"

*Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

In *Anderson*, the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Catrett*, 477 U.S. at 322-23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that the existence of a genuine issue of material fact for trial.

### III. Discussion

Defendants raise the affirmative defense that plaintiff has failed to exhaust his administrative remedies. If plaintiff's claim has not been properly presented through the

administrative remedy procedure it must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. The PLRA provides in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-16 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

Nevertheless, a claim that has not been exhausted may not be considered by this court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, _____ U.S. _____, 136 S. Ct. 1850, 1857 (2016). Therefore, a court ordinarily may not excuse a failure to

exhaust. *Blake*, 136 S. Ct. at 1856 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d at 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he. . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original)). But, the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). In *Blake*, the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." 136 S. Ct. at 1855. In particular, it rejected a "special circumstances" exception to the exhaustion requirement. *Id.* at 1856-57. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id.* at 1855. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

The Supreme Court stated in *Blake* that an administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" 136 S. Ct. at 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit. *See Chase*, 286 F. Supp. 2d at 529-30. As a prisoner, plaintiff is subject to the strict requirements of the exhaustion provisions. *See Nussle*, 534 U.S. at 528 (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure. *See Booth*, 532 U.S. at 741.

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has an established "administrative remedy procedure" ("ARP") for use by Maryland State prisoners for "inmate complaint resolution." *See generally* Md. Code Ann., Corr. Servs. ("C.S.") §§ 10-201 *et seq.* (2008 Repl. Vol.); Md. Code Regs. ("COMAR") 12.07.01.01B(1) (defining ARP). The grievance procedure applies to the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction." C.S. § 10-206(a).

Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance" to include a "complaint of any individual in the custody of the [DOC] . . . against any officials or employees of the [DOC] . . . arising from the circumstances of custody or confinement." COMAR 12.07.01.01B(8). An inmate "must exhaust" the ARP process as a condition precedent to further review of the inmate's grievance. *See* C.S. § 10-206(b); *see also* COMAR 12.07.01.02.D; OPS.185.0002.02.[6]

---

[6]    OPS.185.0002 is an Executive Directive created by the Maryland Department of Public Safety and Correctional Services, titled "Administrative Remedy Procedure (ARP)" ("ARP Directive") available for review at

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any DOC official or employee. C.S. § 10-206(b). However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process, before filing a grievance with the IGO. *See* C.S. § 10-206(b); *see also* OPS.185.0002.02. There is an established administrative remedy procedure process that applies to all Maryland prisons. OPS.185.0002.02. Therefore when the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO.

The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP with his facility's "managing official" OPS.185.0002.05C(1), which is defined by C.S. § 1-101(k) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." In the DOC, each facility's warden is responsible for the ARP at the institutional level. OPS.185.0002.05E. Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. OPS.185.0002.05J.

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP. The prisoner has 30 days to file an appeal with the DPSCS's Deputy Secretary for Operations or that official's designee. OPS.185.0002.05L. For prisoners in DOC facilities, the Commissioner of Correction is the official to whom this appeal is sent. *Id.*

---

http://itcd.dpscs.state.md.us/PIA. "[A] court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015); *see also* Fed. R. Evid. 201(b)(2) (stating that a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO. OPS.185.0002.05D; C.S. § 10-206(a); C.S. § 10-210; COMAR 12.07.01.05B. When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B. An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.S. § 10-208(2)(c); COMAR 12.07.01.07-.08. The conduct of such hearings is governed by statute. *See* C.S. § 10-208; COMAR 12.07.01.07D; *see also* Md. Code Ann., State Gov't §§ 10-101 et seq.

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. C.S. § 10-209(b)(1)(i) & (ii); COMAR 12.07.01.10A. However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* C.S. § 10-209(b)(2), (c).

The final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted his/her remedies. *See* C.S. § 10-210. An inmate need not, however, seek judicial review in State court in order to satisfy the PLRA's administrative

11

exhaustion requirement. *See, e.g.*, *Pozo*, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

Exhausting administrative remedies after a complaint is filed will not save a case from dismissal for failure to exhaust administrative remedies. *See Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001) (overruled on other grounds). In *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999), the court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal court. . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." *See Kitchen v. Ickes*, Civil Action No. DKC-14-2022, 2015 WL 4378159, at *8 (D. Md. July 14, 2015); *see also Miller v. McConneha, et al*, JKB-15-1349, 2015 WL 6727547, at *3-4 (D. Md. November 11, 2015); *Kaufman v. Baynard*, CIV.A. 1:10-0071, 2012 WL 844480 (S.D.W. Va. Feb. 3, 2012), *report and recommendation adopted*, CIV.A. 1:10-0071, 2012 WL 844408 (S.D. W. Va. Mar. 12, 2012); *Blackburn v. S. Carolina*, No. C A 006-2011-PMD-BM, 2009 WL 632542, at *1 (D.S.C. Mar. 10, 2009) *aff'd*, 404 F. App'x 810 (4th Cir. 2010).

The undisputed evidence demonstrates that on February 1, 2017, plaintiff submitted ARP WCI-329-17. ECF 1-1 at 1-2. Plaintiff filed the instant case February 6, 2017. The ARP was dismissed on February 17, 2017, and plaintiff failed to file a headquarters appeal before filing a grievance with the IGO. Although plaintiff filed an opposition response to the dispositive motion (ECF 11), he does not dispute that he failed to properly and fully exhaust his claim **before** bringing this case. As plaintiff failed to both properly exhaust his administrative remedies and to exhaust his remedies prior to instituting his complaint, the complaint shall be dismissed.

**IV. CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss or, in the alternative, for summary judgment will be granted and judgment will be entered in favor of defendants and against plaintiff. Plaintiff's complaint against Jeannette Simmons and Nurse Monica will be dismissed without prejudice. A separate Order follows.

Dated this 26th day of February, 2018.

FOR THE COURT:

_____/s/_____

James K. Bredar
Chief Judge